UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT D. MCCLURG, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12-CV-00361-AGF |
| | ) | |
| MALLINCKRODT, INC., et al., | ) | Lead Case |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiffs in these consolidated actions seek damages under the Price-Anderson Act ("PAA") as amended, 42 U.S.C. §§ 2014, 2210, for injuries allegedly sustained as a result of multiple decades of exposure to hazardous, toxic, and radioactive substances handled by Defendants Mallinckrodt, Inc. and Cotter Corporation at various times between 1942 and 1973, at or near Plaintiffs' residences in north St. Louis County, Missouri.

The matter is now before the Court on Defendants' motion (Doc. No. 427) for partial reconsideration of the Court's prior denial of Defendants' motion to dismiss, on statute-of-limitations grounds, and for judgment on the pleadings with respect to those Plaintiffs who filed claims to recover for the deaths of their decedents more than three years after the deaths. Defendants seek this relief based on a new Missouri Supreme Court opinion. For the reasons set forth below, the Court will grant Defendants' motion.

## BACKGROUND

In June 2014, Defendants moved to dismiss Plaintiffs' complaints, partly on statute-of-limitations grounds. As relevant here, Defendants argued that Plaintiffs whose PAA claims alleged death as a result of exposure to the substances at issue were governed

by Missouri's three-year statute of limitation for wrongful death actions, Mo. Rev. Stat. § 537.100. Defendants argued that such claims accrued at the time of death and that because several Plaintiffs filed suit more than three years after the death of their decedents, those claims had to be dismissed as time-barred.

In response to Defendants' motions to dismiss, Plaintiffs conceded that Missouri's three-year statute of limitations applied to their PAA claims alleging wrongful death. But Plaintiffs argued that federal common law governed the accrual date for those claims, and that under federal law, "[a] claim 'accrues' when the plaintiff knows or reasonably should know both the existence and cause of the injury." *See Slaaten v. United States*, 990 F.2d 1038, 1041 (8th Cir. 1993) (applying federal common law to determine when a claim under the Federal Tort Claims Act accrues).[1] Alternatively, Plaintiffs argued that to the extent their claims were deemed to accrue earlier under state law, such state law was preempted by the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601-9675.

On February 27, 2015, the Court denied Defendants' motions to dismiss on statute-of-limitations grounds. (Doc. No. 262.) The Court held that it did not need to resolve whether federal or state law governed the accrual date of Plaintiffs' claims in this case because even under Missouri law, Plaintiffs' claims did not accrue until they knew or reasonably should have known of the wrongful nature of their decedents' deaths. The

---

[1] Many of the Plaintiffs at issue pleaded that they "neither knew nor reasonably should have known that the decedent's death was caused or contributed to by exposure to radiation until less than three years before commencement of this action." *See, e.g.*, Case No. 4:14-cv-00671, Doc. No. 1 at 7.

Court relied on the holding of the Missouri Court of Appeals in *Boland v. St. Luke's Health System, Inc.*, No. WD 75364, 2013 WL 6170598, at *7 (Mo. Ct. App. Nov. 26, 2013) ("*Boland I*"), that under Missouri law, "[a] wrongful death cause of action does not necessarily accrue at the time of death; rather, it accrues at the time that a diligent plaintiff has knowledge of facts sufficient to put him on notice of an invasion of his legal rights."

Several months later, on August 18, 2015, a 4-3 majority of the Missouri Supreme Court reversed *Boland I* and unequivocally held that, under Missouri law, "a wrongful death claim accrues at death," subject to only two exceptions contained in the statute of limitations itself, Mo. Rev. Stat. § 537.100, and not applicable here. *Boland v. St. Luke's Health Sys., Inc.*, 471 S.W.3d 703, 710 (Mo. 2015), *as modified* (Oct. 27, 2015) ("*Boland II*").[2] The court made clear that Missouri does not delay accrual of wrongful death claims based on a discovery rule such as the one advocated by Plaintiffs. *Id.* at 710.

The state high court in *Boland II* also considered whether the statute of limitations could be equitably tolled, or whether the defendants could be equitably estopped from asserting a statute-of-limitations defense, due to the defendants' alleged fraudulent concealment of the tortious nature of the deaths in that case.[3] *Id.* at 710-11. The court held that no such equitable exception for fraudulent concealment could apply. *Id.* The court reasoned that, despite the "harsh result," it was obligated to follow the mandate of the

---

[2] These two exceptions are "a tolling provision for defendants who abscond from the state to avoid personal service and a one-year savings provision if the plaintiff files a voluntary non-suit or the plaintiff's judgment is reversed and remanded on appeal." *Boland II*, 471 S.W.3d at 707; *see also* Mo. Rev. Stat. § 537.100.

[3] The plaintiffs in *Boland II* alleged that their decedents were intentionally killed by a hospital employee, that the hospital was aware of the employee's actions, and that the hospital acted affirmatively to conceal the suspicious nature of the deaths.

3

state legislature, which had created a "special statute of limitation" for wrongful death, itself a creature of statute. *Id.* at 705, 712-13.

The three dissenting judges in *Boland II* agreed that, under § 537.100, a wrongful death claim accrues at death and cannot be equitably tolled. However, the dissenting judges would have allowed equitable estoppel to bar the defendants from asserting the statute-of-limitations defense based on their fraudulent concealment. *Id.* at 714-19 (Draper, J., dissenting in part).

On the same day that *Boland II* was issued, a different 4-3 majority of the Missouri Supreme Court issued a seemingly conflicting opinion in *State ex rel. Beisly v. Perigo*, 469 S.W.3d 434 (Mo. 2015).[4] In *Beisly*, the court again considered the effect, if any, on § 537.100's statute of limitations when a defendant fraudulently concealed his wrongdoing, making it impossible for the plaintiff to bring her wrongful death action within three years of the decedent's death. 469 S.W.3d at 436. As in *Boland II*, a majority of the court in *Beisly* held that § 537.100 was a special statute of limitations for wrongful death claims; that wrongful death claims accrued at death; and that the statute of limitations could not be tolled for reasons not provided in § 537.100 itself. *Id.* at 438-40. However, contrary to its holding in *Boland II*, the court in *Beisly* held that a defendant who fraudulently concealed his wrongdoing could be equitably estopped from asserting a statute-of-limitations defense. *Id.* at 444-45. In so holding, the court reasoned:

---

[4] The conflict appears to have resulted from the recusal of one of the Missouri Supreme Court judges (and replacement by a Missouri Court of Appeals judge on special assignment) in *Beisly,* but not in *Boland II*. *See Beisly*, 469 S.W.3d at 445 (Fischer, J., dissenting). The two cases were also in different procedural postures, with *Boland II* involving a direct appeal and *Beisly* involving a petition seeking a writ of prohibition. *Id.*

4

> The application of equitable estoppel does nothing to engraft a tolling mechanism or otherwise extend the statute of limitations beyond what is stated expressly in the statute. The cause of action still accrues at the decedent's death, and the statute of limitations begins to run at that time. Equitable estoppel does not toll the running of the statute. Rather, it forecloses the wrongdoer, who concealed his or her actions fraudulently, from asserting the defense.

*Id.* at 444.

On September 2, 2016, Defendants in the present case filed their motion to reconsider and for judgment on pleadings. Defendants argue that, in light of *Boland II*, the Court should reconsider its prior denial of Defendants' motion to dismiss on statute-of-limitations grounds and should grant Defendants judgment on the pleadings with respect to those Plaintiffs who filed PAA claims asserting wrongful death more than three years after their decedents' deaths. Defendants' motion originally identified 74 such Plaintiffs, *see* Doc. No. 427-1, but in their reply brief, Defendants acknowledge that two of these Plaintiffs timely filed their claims on the last day of the three-year period.[5]

In response, Plaintiffs argue that, in light of the conflicting rulings of *Boland II* and *Beisly* and absent further guidance from the Missouri Supreme Court, the Court should decline to reconsider its prior holding. Plaintiffs also reassert the arguments they raised in opposition to Defendants' original motion to dismiss, that federal law governs the accrual date of Plaintiffs' claims and that, to the extent the Court finds that Missouri law governs the accrual date and prohibits delayed accrual, CERCLA preempts Missouri law.

---

[5] With respect to the other 72 Plaintiffs listed in Doc. No. 427-1, the Court has already dismissed some of these Plaintiffs' claims against Cotter (but not Mallinckrodt) on other grounds, relating to Plaintiffs' failure to plead a breach of the applicable federal dose limit.

## DISCUSSION

A "district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." *K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007); *see also* Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims[.]"). District courts have substantial discretion in ruling on motions for reconsideration. However, in general, "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) (citation omitted).

A motion under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings is subject to "the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must accept the plaintiff's factual allegations as true and construe them in plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Id.*; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012).

As an initial matter, although Plaintiffs do not dispute that the 72 Plaintiffs identified by Defendants in Doc. No. 427-1 filed their claims more than three years after their decedents' deaths, the Court notes that the claim filed on behalf of decedent Dawn McDonald appears to have been filed within the three-year period.[6]

Moreover, the Court notes that there may be a question as to the computation of the limitations period with respect to at least some of the other Plaintiffs listed in Doc. No. 427-1. Missouri Supreme Court Rule 44.01(a), which applies to § 537.100's statute of limitations for wrongful death claims, *Bowling v. Webb Gas Co. of Lebanon*, 505 S.W.2d 39, 42 (Mo. 1974), provides that:

> In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included, unless it is a Saturday, Sunday or a legal holiday, in which event the period runs until the end of the next day which is neither a Saturday, Sunday nor a legal holiday.

Rule 44.01, Mo. S.Ct. R. Identical language appears in Mo. Rev. Stat. § 506.060.1.[7]

Applying such computation, the Court's review suggests that at least a few of the Plaintiffs listed in Doc. No. 427-1 (in addition to Dawn McDonald and the two Plaintiffs

---

[6] Doc. No. 427-1 states that the claim on behalf of Dawn McDonald was filed on April 1, 2014, less than three years from the date of Ms. McDonald's death, which (as listed by Defendants) was April 4, 2011.

[7] Federal law also provides similar time-computation rules. *See* Fed. R. Civ. P. 6(a)(1).

7

whom Defendants concede timely filed their claims) may have filed their claims within three years from the date of their decedents' death.[8]

Therefore, although the Court will grant Defendants' motion for the reasons discussed below, the Court will ask the parties to carefully confer regarding which Plaintiffs' claims were filed more than three years after the date of death and to advise the Court of their agreed or respective positions.

Turning then to the merits of Defendants' motion, the Court concludes that *Boland II* requires the Court to reconsider its prior holding that, under Missouri law, Plaintiffs' public liability actions alleging wrongful death did not accrue until they knew or reasonably should have known of the wrongful nature of their decedents' deaths. Such reconsideration also requires the Court to decide whether Missouri law, in fact, governs the accrual and limitations period of the claims at issue. The Court concludes that it does, and that under Missouri law, such claims accrued on the date of death and are therefore untimely to the extent they were filed more than three years after the date of death.

The Court recounted the history of the PAA in its prior Memorandum and Order (Doc. No. 262) and will not repeat it here. But in relevant part, Congress amended the PAA in 1988 to create a federal "public liability action" for injuries arising out of or resulting from any "nuclear incident."[9] 42 U.S.C. § 2210(n)(2). A public liability action

---

[8] For example, Doc. No. 427-1 lists the claims on behalf of decedents James Bess and Peter Lind Jackson as having been filed three years and one day after the date of the decedents' death. But in both cases, the day preceding the filing date appears to have been a Saturday, Sunday, or legal holiday.

[9] A "nuclear incident" is defined broadly as "any occurrence . . . within the United

under the PAA is a "federal cause of action." *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1099-1100 (7th Cir. 1994). But the PAA provides that "the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of [§ 2210 of the PAA]." 42 U.S.C. § 2014(hh).

For the most serious nuclear incidents known as "extraordinary nuclear occurrences"[10] ("ENOs")," the PAA contains a "waiver of defenses" section, which provides that a statute-of-limitations defense may be waived "if suit is initiated within three years from the date on which the claimant first knew, or reasonably could have known, of his injury or damage and cause thereof, but in no event more than ten years after the date of the nuclear incident." *Id.* § 2210(n)(1). The federal courts have construed this waiver provision as either establishing a limitations period for actions arising out of an ENO, *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 542 (2d Cir. 1999), or as applying "a discovery rule" to actions arising out of an ENO "if the action would otherwise be barred

---

States causing . . . bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material." *Id.* § 2014(q).

[10] An "extraordinary nuclear occurrence" is defined more narrowly as "any event causing a discharge or dispersal of source, special nuclear, or byproduct material from its intended place of confinement in amounts offsite, or causing radiation levels offsite, which the Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, determines to be substantial, and which the Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, determines has resulted or will probably result in substantial damages to persons offsite or property offsite." 42 U.S.C. § 2014(j).

9

by a state statute of limitations," *Lujan v. Regents of Univ. of Cal.*, 69 F.3d 1511, 1515 (10th Cir. 1995).

But Plaintiffs do not allege that their claims arise out of an ENO, and with respect to other nuclear incidents, the PAA provides neither a limitations period nor a discovery rule. Rather, as the Court previously held, and the parties agree, with respect to public liability actions arising out of nuclear incidents other than ENOs, federal courts apply the limitations period of the state-law cause of action most analogous to the federal claim—in this case, § 537.100's three-year statute of limitations for wrongful death claims. *See, e.g., Corcoran*, 202 F.3d at 542; *Lujan*, 69 F.3d at 1517; *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1561 (6th Cir. 1997) ("[W]e note that § 2210(n)(1) applies only to ENOs, not all nuclear incidents; therefore, presumably Congress intended not to alter the state law statutes of limitations for nuclear incidents that are not ENOs.").

Whether federal or state law governs the accrual date of Plaintiffs' claims—the subject of the parties' dispute—turns on whether accrual of Plaintiffs' claims is substantive or procedural. As discussed above, "the substantive rules for decision" in a public liability action arising out of nuclear incidents other than ENOS "shall be derived" from state law "unless such law is inconsistent with" the PAA. 42 U.S.C. § 2014(hh).

"[W]here a statute of limitations does not merely bar the remedy for the violation of a right but limits or conditions the right itself, courts have treated the statute [and its corresponding accrual rules] as substantive." *Lujan*, 69 F.3d at 1517. In Missouri, the limitations period for a wrongful death claim is of the latter variety in that it is "a necessary condition attached to the right to sue—not merely a statute of limitations in the ordinary

sense." *Crenshaw v. Great Cent. Ins. Co.*, 527 S.W.2d 1, 4 (Mo. Ct. App. 1975); *see also Lujan*, 69 F.3d at 1517 (collecting cases for the proposition that limitations period contained in wrongful death statutes are generally held to be substantive in that they operate as a limitation of liability). Therefore, the Court finds that Missouri's limitations period and corresponding accrual rule for wrongful death claims are substantive and control here so long as they are not inconsistent with the PAA.

As discussed above, *Boland II* requires the Court to conclude that, under Missouri law, wrongful death claims accrue at death and no discovery rule applies. *See Boland II*, 471 S.W.3d at 710; *accord Beisly*, 469 S.W.3d at 438-40. Any conflict between *Boland II* and *Beisly* as to whether a defendant may be equitably estopped from asserting a statute-of-limitations defense due to his own fraudulent concealment does not alter the Court's conclusion, because Plaintiffs have never alleged that Defendants engaged in fraudulent concealment.

The Court also concludes that applying Missouri's limitation period and accrual rule to Plaintiffs' public liability actions asserting wrongful death would not be inconsistent with the PAA. The Court is persuaded by the Tenth Circuit's reasoning in *Lujan*, in which the court applied New Mexico's wrongful death limitations period (which, like Missouri, accrues at death and does not include a discovery rule to delay accrual) to a plaintiff's public liability action seeking to recover for her daughter's death arising out of a non-ENO nuclear incident. *Lujan*, 69 F.3d at 1518. The Tenth Circuit recognized that application of the state limitations period "may lead to harsh or unjust results in cases such as this involving latent injuries." *Id.* at 1521. Nevertheless, the court held that it was

11

bound by the plain language of the PAA, which "as written does not mandate application of a discovery rule in a case [arising out of a non-ENO nuclear incident]" but instead requires federal courts to "look to state law." *Id.* at 1519. Plaintiffs have not cited, and the Court has not found, any contrary authority. Therefore, the Court will apply Missouri's limitations period and accrual rule for wrongful death actions to conclude that Plaintiffs' public liability actions asserting wrongful death are untimely to the extent they were filed more than three years after death.

The Court also agrees with Defendants that CERCLA has no effect here. CERCLA provides:

> In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date [defined as "the date the plaintiff knew (or reasonably should have known) that the personal injury [was] caused or contributed to by the hazardous substance or pollutant or contaminant concerned"], such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

42 U.S.C. §§ 9658(a)(1), (b)(4)(A). Plaintiffs have not cited, and the Court has not found, any authority for the proposition that CERCLA would displace the state limitations period applicable to a PAA public liability action. By its plain terms, CERCLA applies to cases "brought under state law." *Id.* § 9658(a)(1). As discussed above, Plaintiffs' public liability actions constitute federal causes of action, arising under a federal statute expressly providing that its substantive rules shall be derived from state law. *Cf. Freier v. Westinghouse Elec. Corp.*, 303 F.3d 176, 183 (2d Cir. 2002) (cited by Plaintiffs but

12

applying CERCLA to state-law wrongful death and personal injury claims that the federal court heard under its diversity jurisdiction). The Court does not believe that CERCLA applies here.

## **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion for reconsideration and judgment on the pleadings is **GRANTED**. (Doc. No. 427.)

**IT IS FURTHER ORDERED** that the parties shall carefully confer and, within **14 days** of the date of this Order, shall advise the Court of their agreed or respective positions as to which Plaintiffs filed PAA public liability actions alleging wrongful death more than three years after the date of death of their decedents.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 31st day of October, 2016.